TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING









NO. 03-05-00275-CV






Jackie Doss Smith, Appellant


v.


Virginia Lagerstam, Emil Lagerstam, Kathryn Lagerstam Wilbeck,

Vivian Lagerstam Savage, and Annika Lagerstam Kaye, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. GN402753, HONORABLE MARGARET COOPER, JUDGE PRESIDING




D I S S E N T I N G O P I N I O N



 Mindful that we may not relax a movant's burden in a summary judgment proceeding
so as to deprive a litigant of the right to trial by jury, I would conclude that this case turns on the
inadequacy of the Lagerstams' motion for summary judgment and error compounded by the majority
in affirming summary judgment on grounds not raised in the motion. Because a material fact issue
exists on elements of Smith's causes of action and the Lagerstams' motion is entirely inadequate
with respect to Smith's cause of action for unilateral mistake, I respectfully dissent.






BACKGROUND

 Smith's father, Clarence T. Doss--now deceased--and his sister, Virginia Lagerstam,
inherited identical mineral interests to land in Robertson County, Texas. Smith inherited her father's
interest when he died. In 1984, Smith and Virginia Lagerstam leased their mineral interests to XTO
Energy by separate oil and gas leases. These leases were included in a pooled unit known as the
Biggs Gas Unit. Under the terms of their leases and the unit designation, Smith and Virginia were
each entitled to receive a .0009901 royalty interest on production from wells on the unit.

 From 1985 to 2002, Smith received small royalty payments on the Biggs Gas Unit,
which had one well, the Biggs #1 Well. In 2002, a second well was drilled on the unit, the Biggs #2, 

and in 2003, a third well, the Biggs #12 well, was drilled. In January 2004, Smith and Virginia were
both receiving royalty payments on the three wells in the approximate amount of $350 per month. (1)

 In February 2004, Smith received an unsolicited offer in the mail from San Saba
Royalty to purchase her .0009901 royalty interest in the Biggs Gas Unit for $6658.99. At about the
same time, Smith learned that her disabled son needed $6000 to pay back taxes on his home. In her
affidavit in response to the summary judgment motion, Smith averred that she was a widow, had no
other source of income, and had been unable to help her son. Because the offer provided an
opportunity for her to help her son, she decided to investigate the offer further. Knowing that her
aunt Virginia had a royalty interest identical to hers, and assuming that Virginia had received the
same offer, Smith called Virginia for advice. Smith averred that she believed Virginia and her
husband Emil had greater business knowledge, particularly about matters related to royalties and oil
and gas. Smith explained her son's tax problem and her desire to help him, and sought Virginia's
advice. Smith averred that Virginia said she would talk to Emil and call Smith back. In her
deposition, Virginia confirmed that Smith needed the money for her son. The parties dispute other
aspects of the telephone call.

 After discussing the matter with Emil, the next day Virginia contacted Smith and
offered to purchase Smith's royalty interest for the same price offered by San Saba. Virginia
explained that she wanted to give the interest to her three daughters. Smith averred that she told
Virginia that she was not aware she could sell her interest to someone other than the company that
had made the offer. Virginia assured her that they could buy the interest and expressed her desire
that Smith deed the interest in the wells directly and in equal portions to the daughters. Because she
considered the sale a good way to help her son and also to keep the royalty interest in the family,
Smith agreed to sell her interest to the Lagerstams and deed the interest over to the daughters.

 The Lagerstams proceeded to prepare the papers. Smith received her last royalty
check before signing over the deeds; the check dated February 20, 2004, was in the amount of
$353.85. On March 9, 2004, Virginia and Emil Lagerstam traveled to Austin and met with Smith. 
Smith executed three royalty deeds prepared by the Lagerstams' attorney and received a check from
the Lagerstams for $6660. Smith averred that she "trusted Virginia and Emil to have the deeds
prepared to reflect" their agreement. She understood that she was selling to the Lagerstams exactly
the same interest that San Saba offered to purchase--her royalty interest in the Biggs Gas Unit. 
Smith sent the $6660 to her son to pay his back taxes on his home.

 After executing the deeds, Smith received three royalty checks from XTO Energy
which she understood were for production prior to the sale. On March 19, she received a check
for $510.10 as royalty on the Biggs #'s 1, 2, and 12 wells. For the first time, however, the check
included royalties for a new well known as the Biggs #7 well. On April 20, she received a check
in the amount of $1025.90 as royalties for the Biggs #1, 2, 7, and 12 wells, as well as another
new well, the Biggs #4. On May 20, she received a third check in the amount of $974.85 as royalties
on production from all five wells--Biggs #'s 1, 2, 4, 7, and 12. Because she thought that the
payments on the two additional wells were a mistake, she attempted to contact XTO Energy to
inquire about them.

 On June 10, 2004, Smith received by mail (i) a transfer order from XTO Energy
showing the transfer of her royalty interest to the Lagerstams' daughters and (ii) a new offer to
purchase her royalty interest from San Saba--this one for $62,651.38. The transfer order listed
all five Biggs Gas Unit wells. Smith immediately contacted XTO Energy and obtained confirmation
that her interest had included five wells, rather than three. She also spoke with Hal Coons of
San Saba who reaffirmed the offer to purchase. Smith averred that she learned for the first time
through these conversations that there were five wells and that her interest in all of the wells had
been conveyed to the Lagerstams' daughters.

 After receiving the revised San Saba offer, Smith contacted Virginia and told
her about the additional offer and the two new wells. Smith explained the mistake and asked
Virginia if they could "undo" the transaction. Virginia declined and said that it was impossible to
undo the transaction.

 Smith subsequently learned that the Biggs #7 well, on which she first received
royalties on approximately March 19, was completed in January 2004 and that the Biggs #4 well,
on which she first received royalties on April 20, was completed in February 2004. Thus, both wells
had been completed and were producing before Smith agreed to sell her royalty interest to the
Lagerstams, but she received no payments on the wells until after she had signed the deeds over to
the Lagerstam daughters. Smith wrote a letter to the three daughters explaining the background of
the wells and how she learned of the two new wells. She advised them: "I assumed that I was only
selling a royalty interest that would pay $200-$300 per month. I don't know if Virginia knew about
the two new wells, but if she did, she didn't tell me." Smith offered to refund the purchase price and
to pay for any legal fees necessary to transfer the interests to her own children who had had a "tough
time economically" and to whom the additional income would mean a lot. She concluded, "I hope
you can find it in your heart to help me and, more important, my children."

 In her affidavit filed in response to the summary judgment motion, Smith averred that
she did not know of the two additional wells when she signed over the deeds. According to
Virginia's affidavit in support of the Lagerstams' motion, neither did the Lagerstams:


 As of March 9, 2004, I had no knowledge of the status of the wells existing being
drilled and/or being planned to be drilled. My only knowledge consisted of the
information attached to the monthly royalty checks which would be the same
information that Plaintiff would receive. I had no knowledge that additional wells
were being drilled or had been drilled, or were being planned to be drilled. I made
no representation to the Plaintiff on any of these matters because I had no knowledge
about the wells.



The Lawsuit

 In two causes of action, Smith filed suit to rescind the three deeds on the grounds that
the deeds were the result of a mutual or a unilateral mistake. Specifically, she urged that the deeds
by mutual mistake conveyed more than the parties intended. In her second cause of action, she
alleged that she executed the deeds in error and that the transaction did not reflect her understanding
and agreement as to the interests being sold. She alleged that she did not fail to exercise ordinary
care under the circumstances in signing the deeds as prepared by her aunt and uncle's attorney. 
Smith asked that the deeds be reformed to convey only her interest in royalties on production from
the Biggs Gas Unit Well #'s 1, 2, and 12 or, in the alternative, that the transaction be rescinded.


Summary Judgment Motion

 In a one-and-a-half-page motion for summary judgment filed pursuant to Texas Rule
of Civil Procedure 166a(b) and (i) with no citation to authority, the Lagerstams contend that they
were entitled to summary judgment because Smith failed to adduce any evidence that the mistake
was mutual and that the Lagerstams "never said or did anything to indicate that the sale was
supposed to be a transfer only of an interest that involved a certain number of then existing wells." 
They assert that "[t]he Affidavit evidence conclusively establishes that the Defendants, the
Purchasers of the interest, never intended for their purchase to be anything other than for the entire
interest owned by Plaintiff," and that "[n]either law nor fact supports the Plaintiff's attempt to set
aside the transaction on the basis of an alleged unilateral mistake on her part." Attached to the
motion are Virginia's affidavit; San Saba's February 9, 2004 letters with the initial purchase offer;
the three mineral and royalty deeds conveying Smith's interest to the three daughters; Emil
Lagerstam's check payable to Smith in the amount of $6660; an offer to purchase Virginia's interest
in the amount of $1087.50, dated March 5, 2004, from another company; and Smith's letter to the
daughters requesting rescission, dated July 1, 2004. The Lagerstams also submitted excerpts of the
deposition transcripts of Smith, Virginia Lagerstam, and Emil Lagerstam.

 To controvert the Lagerstams' motion, Smith filed a response to which she attached
the following evidence: Smith's affidavit appending five exhibits showing the San Saba offers, the
conveyancing documents, and the division transfer order and XTO Energy documents showing the
additional wells; the affidavit and resume of Wayman T. Gore, Jr., a consulting petroleum engineer
who opined as to the present value of Smith's royalty interest in the existing and additional wells;
excerpts of the depositions of Virginia and Emil Lagerstam; and Virginia's affidavit.

 The trial court granted the Lagerstams' motion without specifying its grounds. Smith
now appeals, claiming the trial court erred in granting summary judgment because the summary
judgment proof establishes evidence in support of the elements challenged by the motion and, in any
event, raises genuine issues of material fact.


ANALYSIS


 On appeal, Smith contends that the trial court erred when it granted the Lagerstams'
motion because issues of material fact exist regarding whether the deeds should be rescinded on the
basis of a mutual or unilateral mistake. Citing only to Rule 166a(b) and (i) and relying on no case
law, the Lagerstams' motion does not otherwise specify the type of summary judgment they seek. 
Nor do they join issue on appeal as to whether their motion is a "traditional" or a no-evidence
motion. (2) They claim that they always intended to acquire Smith's entire royalty interest, that any
mistake alleged was not mutual, and that any unilateral mistake was the result of Smith's
carelessness.


Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). A party filing a traditional motion for summary judgment must
prove that "there is no genuine issue as to any material fact and the moving party is entitled to
judgment as a matter of law on the issues expressly set out in the motion." Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and
summary judgment evidence establish its right to judgment as a matter of law, the burden shifts to
the nonmovant to defeat summary judgment. The nonmovant then has the burden to respond to the
motion and to present to the trial court any issues that would preclude summary judgment. City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). Summary judgment is
appropriate only when there are no disputed issues of material fact and the moving party is entitled
to judgment as a matter of law. Nixon, 690 S.W.2d at 548. In deciding whether there exists a
disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as
true, and we must resolve every doubt and indulge all reasonable inferences in the nonmovant's
favor. Id. at 548-49. The Lagerstams--in their motion--had the burden to disprove as a matter of
law at least one essential element of each of Smith's theories of recovery or to plead and
conclusively establish each element of an affirmative defense. See Centeq Realty, Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995). Because they did not plead or seek to establish an affirmative
defense, they were required to disprove an element of Smith's theories of recovery.

 The party moving for no-evidence summary judgment must assert only that there is
no evidence of one or more essential elements of a claim or defense on which the nonmovant would
have the burden of proof at trial. Tex. R. Civ. P. 166a(i). The burden then shifts to the nonmovant
to produce evidence raising a fact issue on the challenged elements. Id. In reviewing a no-evidence
motion for summary judgment, we ascertain whether the nonmovant pointed out summary judgment
evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in
the no-evidence motion. Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 206-08 (Tex. 2002). 
A no-evidence motion for summary judgment must be granted if the party opposing the motion does
not respond with competent summary judgment evidence that raises a genuine issue of material fact. 
Tex. R. Civ. P. 166a(i).

 A no-evidence summary judgment is improper if the respondent brings forth more
than a scintilla of probative evidence to raise a genuine issue of material fact. Id.; Forbes Inc.
v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003). "Less than a scintilla of evidence
exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of
a fact." King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists if it
would allow reasonable and fair-minded people to differ in their conclusions. Id. As with a Rule
166a(c) summary judgment, we take as true all evidence favorable to the nonmovant, and we make
all reasonable inferences therefrom in the nonmovant's favor, disregarding all contrary evidence and
inferences. Id.

 A summary judgment motion under Rule 166a(b) may be combined with a Rule
166a(i) motion as it appears it was here. The fact that the Lagerstams as movants attached evidence
to the motion does not foreclose it from also asserting that there is no evidence of a particular
element. See Binur v. Jacobo, 135 S.W.3d 646, 650-51 (Tex. 2004).

 When, as in this case, the order granting summary judgment does not specify the
grounds upon which the trial court relied, we must affirm the summary judgment if any of the
theories advanced in the motion is meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d
150, 157 (Tex. 2004).


Mutual Mistake

 In their motion for summary judgment, the Lagerstams first contend that there is no
evidence that the Lagerstams "intended for the transaction to be limited as Plaintiff claims." 
Virginia's affidavit, they claim, "conclusively establishes that the Defendants, the Purchasers of the
interest, never intended for their purchase to be anything other than for the entire interest owned by
the Plaintiff." They assert that "the most basic element of this cause of action is that the mistake was
mutual" and there is "no evidence that the Defendants intended for the transaction to be limited as
Plaintiff claims."

 When parties have contracted based on misconception or ignorance of a fact, mutually
held by the parties, which materially affects the agreed-upon exchange, either party is entitled to have
the transaction set aside. Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990). The elements
of mutual mistake that must be proved by the plaintiff to prevail at trial are (i) a mistake of fact;
(ii) held mutually by the parties; (iii) which materially affects the agreed-upon exchange. Barker
v. Roelke, 105 S.W.3d 75, 84 (Tex. App.--Eastland 2003, pet. denied); de Monet v. PERA,
877 S.W.2d 352, 357 (Tex. App.--Dallas 1994, no writ) (citing Restatement (Second) of Contracts
§ 152 (1981)).

 A motion for summary judgment must rest on the grounds expressly presented in the
motion. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex. 1993). The motion
must state, with specificity, the grounds upon which the movant is relying. Brewer & Pritchard,
P.C., 73 S.W.3d at 204. The rationale for this requirement is to force the movant to define the issues
and give the nonmovant adequate notice for opposing the motion. McConnell, 858 S.W.2d at 343-44. To determine if the grounds are expressly presented in the motion, neither the court nor the
movant may rely on supporting briefs or summary judgment evidence. Id. at 340-41. A summary
judgment may not be granted on grounds not raised by the movant, as the majority has done here.

 By their motion for a traditional summary judgment, the Lagerstams were required
to show that they were entitled to judgment as a matter of law and that no genuine issue of material
fact exists. See Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215-16 (Tex. 2003). 
A summary judgment movant bears this burden only when moving for traditional summary
judgment. When the movant does not meet its burden of proof to show its entitlement to summary
judgment, the burden does not shift to the nonmovant to raise a fact issue. M. D. Anderson Hosp.
v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). (3)

 In their motion, the Lagerstams first moved for summary judgment on Smith's causes
of action, seeking to prove with summary judgment evidence that Smith has no cause of action. 
They assert that there is no evidence of mutual mistake because there is no evidence that the
Lagerstams intended to purchase only Smith's interest in the three wells on which they were
both receiving royalties. They assert as grounds for the motion that they "never intended for their
purchase to be anything other than for the entire interest owned by the Plaintiff." But Smith is
not asserting that the deeds conveyed more than she intended to convey; rather, she asserts that
the transaction was founded on the parties' mutually mistaken belief that, at the time of the
transaction, there were three wells on the Biggs Gas Unit, when in fact there were five. Thus, the
parties present contradictory evidence as to what was known at the time of conveyance and what was
intended to be conveyed.

 In the first instance, the Lagerstams did not establish that they were entitled to
summary judgment as a matter of law. By merely disputing that the mistake was mutual, they did
not carry their burden to disprove at least one element of the plaintiff's theory of recovery. At most,
they created a fact issue. In a traditional summary judgment motion, evidence and reasonable
inferences are viewed in the light most favorable to the nonmovant, Smith, and we must indulge
every reasonable inference and resolve all doubts in Smith's favor. See Nixon, 690 S.W.2d at 549. 
The burden did not shift to Smith until the Lagerstams conclusively established their entitlement to
summary judgment. See M. D. Anderson Hosp., 28 S.W.3d at 23. Even then, Smith's summary
judgment response did not have to establish a fact as a matter of law. Rather, Smith had only to raise
an issue of fact material to the outcome of the case. See Tex. R. Civ. P. 166a(c); Centeq Realty, Inc.,
899 S.W.2d at 197.

 Accordingly, after reviewing the evidence, I would hold that a fact question exists as
to the only ground asserted for summary judgment: whether any mistake of fact was mutual. In light
of the conclusory nature of the motion and the questions of Smith's and Virginia's intent, state of
mind, and credibility on the issues in the case, these issues pose classic questions of fact
for resolution by a jury. The majority missteps into the shoes of the fact finder and resolves these
issues without reference to the requirement that we resolve such doubts and inferences in the
nonmovant's favor.

 Moreover, by urging that Smith "is put to the burden of proving the essential
elements" of her causes of action and that there is "no evidence that the Defendants intended for the
transaction to be as limited as Plaintiff claims," the Lagerstams in effect are asserting a no-evidence
motion rather than a traditional motion. And the only ground asserted in the motion is that the
mistake was not mutual because the belief was not also held by the Lagerstams.

 The mistake of fact alleged by Smith is the number of producing wells on the Biggs
Gas Unit at the time of the sale. Smith's affidavit and Virginia's affidavit agree that neither knew
any more about the number of wells on the unit than the information provided on their check stub
from XTO Energy. According to the check stubs they were receiving prior to the sale, there were
three producing wells on the gas unit, paying royalties to Smith of approximately $350 per month. 
The summary judgment evidence is undisputed that neither of the parties knew anything about the
two additional producing wells at the time of the sale. Smith was only required to produce more than
a scintilla of evidence to defeat summary judgment. This evidence alone raises a fact issue that there
was a mistake of fact held mutually by the parties. The Lagerstams did not show their entitlement
to summary judgment and, in any event, Smith raised questions of material fact to defeat the motion.


Unilateral Mistake

 Even assuming the Lagerstams carried their burden as to Smith's mutual mistake
theory, their motion was deficient with respect to their second ground, which attacked in one
sentence Smith's second cause of action. In their second ground for summary judgment, the
Lagerstams refer to Smith's allegation of unilateral mistake. The entirety of their motion as to
unilateral mistake states: "Neither law nor fact supports the Plaintiff's attempt to set aside the
transaction on the basis of an alleged unilateral mistake on her part." They cite no authority and,
except for a reference to Virginia's affidavit, they fail to point to relevant facts. This declaration is
deficient and fails to satisfy the Lagerstams' summary judgment burden under either traditional or
no-evidence summary judgment requirements.

 A party is entitled to set aside a transaction for unilateral mistake if (i) the mistake
relates to a material feature of the contract, (ii) the mistake is so great that to enforce the contract
would be unconscionable, (iii) the mistake was not the result of a lack of ordinary care, and
(iv) rescission does not result in prejudice to the other party, other than the loss of his bargain. 
James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist., 335 S.W.2d 371, 373 (Tex. 1960). A
contract cannot be avoided for unilateral mistake where a party's "ignorance of the facts was the
result of carelessness, indifference, or inattention." Roland v. McCullough, 561 S.W.2d 207, 213
(Tex. Civ. App.--San Antonio 1978, writ ref'd n.r.e.).

 Regardless of whether we view the Lagerstams' motion as to unilateral mistake as
a traditional or no-evidence motion, it is defective and insufficient. A summary judgment motion
must clearly set forth its grounds and meet the rule's requirements. Binur, 135 S.W.3d at 651. 
Consisting of only a single sentence, the Lagerstams' motion cites to no authority and refers to no
evidentiary facts. Because it fails to show any entitlement to summary judgment, it fails to satisfy
the requirements of a traditional summary judgment motion. The Lagerstams' single sentence did
not shift the rule 166a(c) summary judgment burden from the Lagerstams, the movants, to Smith,
the nonmovant. See M. D. Anderson Hosp., 28 S.W.3d at 23.

 In addition, the declaration that "neither law nor facts supports plaintiff's attempt to
set aside the transaction on the basis of" unilateral mistake is deficient to qualify as a 166a(i) motion
because the motion fails to specify either the elements of the cause of action or the elements
challenged as lacking evidence to support them. Although the mere filing of a proper no-evidence
motion shifts the burden to the nonmovant, and the motion need not be detailed, it must still meet
certain requirements. It must first state the elements for which there is no evidence. Tex. R. Civ.
P. 166a(i); Southwest Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). A defendant's
motion must state the elements of the plaintiff's cause of action and specifically challenge the
evidentiary support for an element of that claim. Tex. R. Civ. P. 166a(i) cmt.; Lampasas v. Spring
Ctr., Inc., 988 S.W.2d 428, 436 (Tex. App.--Houston [14th Dist.] 1999, no pet.).

 Second, the motion cannot be conclusory or generally allege that there is no evidence
to support the claims. Id. A motion, as here, that merely states that there is no evidence to support
the other party's claim is insufficient. See, e.g., David Hittner and Lynne Liberato, Summary
Judgments in Texas, 47 S. Tex. L. Rev. 409, 416 (2006) (citing Abraham v. Ryland Mortgage Co.,
995 S.W.2d 890, 892 (Tex. App.--El Paso 1999, no pet.) and Lampasas, 988 S.W.2d at 436). The
Lagerstams fail both to specify the elements of Smith's claim and to state which elements lacked 
evidentiary support.

 In any event, assuming arguendo that the Lagerstams' motion was sufficient in any
respect, Smith was required to produce more than a scintilla of evidence in response to the
Lagerstams' 166a(i) motion. This she did. Smith produced ample evidence on each element of this
cause of action; the Lagerstams did not reply to Smith's response.

 The mistake alleged by Smith--her understanding that there were three producing
wells on the Biggs Gas Unit--relates to a material feature of the agreement. The facts as adduced
by Smith at least raise a fact issue as to whether Smith showed such carelessness, indifference,
inattention or lack of good faith to deny her equitable relief. The Lagerstams do not dispute that
Smith had no knowledge about mineral interests. Virginia disputes that Smith called the Lagerstams
for advice because they had superior knowledge of the business of royalty interests and oil and gas,
but Virginia avers that they did not investigate the status of the Biggs Gas Unit any more than Smith
did before agreeing to the transaction. Although the Lagerstams argue on appeal that Smith should
have known that her royalty interest involved multiple wells and that the number of wells on the unit
was increasing, in her affidavit Virginia averred that "I had no knowledge of the status of the wells
existing being drilled and/or being planned to be drilled." Smith averred as to how she came to learn
after the transaction that two new wells were drilled on the property just prior to the conveyance. 
This evidence alone raises a fact issue that there was a material mistake of fact that was not the result
of a lack of ordinary care. Moreover, the evidence shows--and is undisputed--that the magnitude
of the mistake was considerable and that rescission would not result in prejudice to the other party
other than the loss of the bargain. The Lagerstams failed to carry their summary judgment burden.


CONCLUSION


 I would hold that the Lagerstams did not carry their burden to demonstrate their
entitlement to summary judgment, that Smith demonstrated that genuine issues of material fact exist
on elements of her causes of action, and that the district court erred in rendering summary judgment
in favor of the Lagerstams.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed: July 19, 2007
1. The January and February 2004 royalty checks were $329.90 and $353.85, respectively. 
2. Although Smith on appeal characterized the Lagerstams' motion for summary judgment
as a traditional motion, she nevertheless responded to both types of motions. While a party may
move for both traditional and no-evidence summary judgment in a single document, it is advisable
to use headings to separate the different claims, see Binur v. Jacobo, 135 S.W.3d 646, 651
(Tex. 2004), or, at least, because the motions are distinct and invoke different standards of review,
that the motions be set forth so that they give adequate notice of the grounds on which they are
based. A summary judgment must stand or fall on its own merits. In determining whether grounds
are expressly presented, reliance may not be placed on briefs or summary judgment evidence. 
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993). For purposes of this
discussion, I have assumed that the Lagerstams asserted both traditional and no-evidence motions.
3. A movant must establish its entitlement to summary judgment, the motion must stand on
its own merit, and even a nonmovant's failure to respond cannot supply by default the summary
judgment proof necessary to establish the movant's right. City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 678 (Tex. 1979).